Slip Op. 11-100

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| TIANJIN MAGNESIUM INTERNATIONAL CO., LTD., <br><br>        Plaintiff, <br><br>        v. <br><br>UNITED STATES, <br><br>        Defendant, <br><br>        and <br><br>US MAGNESIUM LLC, <br><br>        Intervenor Defendant. | Before: Jane A. Restani, Judge <br><br> Court No. 09-00535 |

## OPINION

[Judgment sustaining remand results setting an AFA antidumping duty rate will be entered.]

Dated: August 10, 2011

        Riggle and Craven (David A. Riggle, Lei Wang, and Saichang Xu) for the plaintiff.

        Tony West, Assistant Attorney General; Jeanne E. Davidson, Director; Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David S. Silverbrand and Renee A. Gerber); Thomas M. Beline, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for the defendant.

        King & Spalding, LLP (Stephen A. Jones, Jeffery B. Denning, and Joshua M. Snead) for the intervenor defendant.

        Restani, Judge: This matter comes before the court following its decision in Tianjin Magnesium Int'l Co. v. United States, Slip Op. 2011-17, 2011 Ct. Int'l Trade LEXIS 16

(CIT Feb. 11, 2011), in which the court remanded <u>Pure Magnesium from the People's Republic of China: Final Results of Antidumping Duty Administrative Review</u>, 74 Fed. Reg. 66,089 (Dep't Commerce Dec. 14, 2009) ("<u>Final Results</u>"), instructing the United States Department of Commerce ("Commerce") to make a finding as to whether plaintiff Tianjin Magnesium International Co., Ltd. ("TMI") cooperated to the best of its ability in its antidumping ("AD") review. <u>Tianjin Magnesium Int'l</u>, 2011 Ct. Int'l Trade LEXIS 16, at *18. For the reasons stated below, the court sustains the <u>Final Results of Redetermination Pursuant to Court Remand Pure Magnesium from the People's Republic of China</u> (Dep't Commerce May 12, 2011) ("<u>Remand Results</u>") (Docket No. 63). In accordance with this conclusion, the court now reaches the remaining issues raised by TMI's motion for judgment on the agency record challenging the legality of the adverse facts available ("AFA") rate assigned to it by Commerce and rejects these claims as well.

## BACKGROUND

The facts of this case have been well documented in the court's previous opinion. <u>See</u> <u>Tianjin Magnesium Int'l</u>, 2011 Ct. Int'l Trade LEXIS 16, at *2–5. The court presumes familiarity with that decision, but briefly summarizes the facts relevant to this opinion.

In July 2008, Commerce initiated an administrative review of its AD order on pure magnesium from the People's Republic of China ("PRC"). <u>Initiation of Antidumping and Countervailing Duty Administrative Reviews and Requests for Revocation in Part</u>, 73 Fed. Reg. 37,409, 37,409 (Dep't Commerce July 1, 2008). During verification, Commerce concluded that certain documents supplied by TMI, the only respondent, were unreliable and assigned it an AFA

rate of 111.73%. See Issues and Decision Memorandum for the Final Results of the 2007-2008 Administrative Review of Pure Magnesium from the People's Republic of China, A-570-832, POR 5/1/2007–4/30/2008, at 10 (Dep't Commerce Dec. 7, 2009) ("Issues and Decision Memorandum"), available at http://ia.ita.doc.gov/frn/summary/PRC/E9-29727-1.pdf (last visited Aug. 2, 2011); Final Results, 74 Fed. Reg. at 66,090. In making this determination, Commerce based its application of AFA on a finding that TMI's producers "failed to cooperate to the best of their ability." Final Results, 74 Fed. Reg. at 66,090.

In December 2009, TMI filed a complaint challenging the Final Results on various grounds. TMI then moved for judgment on the agency record, claiming that Commerce improperly assigned it an AFA rate based on a finding of its unaffiliated producer's uncooperative behavior, that the AFA rate of 111.73% is contrary to law and not supported by substantial evidence, and that its due process rights had been violated. See Mot. for J. on the Agency R. Submitted by Pl. Tianjin Magnesium Int'l Co., Ltd. Pursuant to Rule 56.2 of the Rules of the U.S. Court of Int'l Trade ("Pl.'s Br.") 3. Upon considering these arguments, the court held that "Commerce's decision to apply AFA to TMI . . . was in violation of 19 U.S.C. § 1677e(b) because it did not make a fail[ure] to cooperate finding as to the actual respondent, TMI." Tianjin Magnesium Int'l, 2011 Ct. Intl. Trade LEXIS 16, at *8–9 (alteration in original) (internal quotation marks omitted). In addition, the court denied TMI's motion as to its due process claims. Id. at *18. The court, however, did not reach TMI's corroboration arguments because consideration of those issues, absent a finding that TMI failed to cooperate, was premature. See id. at 11 n.7. Thus, the court ordered a remand, instructing Commerce "to either find that TMI

failed to cooperate to the best of its ability and assign it an AFA rate, or calculate a neutral facts available rate for TMI . . . ." Id. at *9.

On remand, Commerce found that "TMI failed to cooperate to the best of its ability," Remand Results at 24, because it "significantly impeded the review and provided information that could not be verified," id. at 4. Based on this determination, Commerce stated that it would "continue[] to assign, as AFA, the rate of 111.73 percent for TMI . . . ." Id. at 24. TMI now claims that this finding is contrary to law and not supported by substantial evidence. Pl.'s Cmts. on the Results of Redetermination Pursuant to Court Remand ("Pl.'s Cmts.") 10. In addition, TMI continues to challenge the legality of the 111.73% AFA rate. See id. at 23.[1]

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). The court will uphold Commerce's final results, as well as its remand results, in AD reviews unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I.    Failure to Cooperate

TMI claims that Commerce's finding that it failed to cooperate by not acting to the best of its ability is contrary to law and not supported by substantial evidence. See Pl.'s Cmts. 10–23. Specifically, TMI argues that Commerce failed to establish with evidence that it

---

[1] The intervenor defendant US Magnesium LLC asks the court to sustain the Remand Results. See US Magnesium's Cmts. Concerning Commerce's Redetermination Pursuant to Remand 5.

had access to, and thus, could verify, information from its unaffiliated supplier. See id. at 13. This claim lacks merit.

During an AD review, when "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority . . . the administering authority . . . may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b). Although the case law "does not require perfection and recognizes that mistakes sometimes occur, it does not condone inattentiveness, carelessness, or inadequate record keeping." Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003); see Tianjin Magnesium Int'l, 2011 Ct. Int'l Trade LEXIS 16, at *10 n.6. Moreover, under 19 C.F.R. § 351.303(g)(1), "Commerce's regulations require a representative of the company participating in an administrative review or investigation to certify that he has read the attached submission, and that to the best of his knowledge, the information contained in the submission is complete and accurate." PAM, S.p.A. v. United States, 31 CIT 1008, 1018, 495 F. Supp. 2d 1360, 1369 (2007).

On remand, Commerce determined that TMI failed to cooperate to the best of its ability because it continued to purport the accuracy of certain favorable valuations, despite the existence of discoverable falsifications in its producers' supporting documentation.[2] See

---

[2] Even assuming, for arguments sake, that TMI did not have the resources to completely verify the accuracy of its producer's documentation, the court notes that Commerce did not place TMI in this situation. See Pl.'s Cmts. 13–16. Rather, TMI claimed certain by-product offsets to its normal value, rendering the verification of this supposed unobtainable information necessary. See Remand Results at 7. Furthermore, at no time did TMI notify Commerce of any of the
(continued...)

Court No. 09-00535 Page 6

Remand Results, at 15–16. The record evidence shows that during its review, Commerce attempted to verify the by-product offset claimed by TMI by examining the records of its unaffiliated producers. See Issues and Decision Memorandum at 6. Commerce, however, encountered multiple documents that were obviously altered. Id. at 6. Specifically, Commerce discovered that certain vouchers had been pasted into accounting books. Id. In addition, the producers repeatedly thwarted Commerce's requests for information by, inter alia, throwing voucher books out of office windows. Id. at 7. Commerce concluded that TMI possessed the ability to discover these inaccuracies because the evidence suggests that it had access to the unaffiliated producers' production records and other ledgers, and had its officials and attorney actively assist Commerce on behalf of the producers during verification. See Remand Results at 5–6, 9, 12–13. Commerce's application of AFA, therefore, is adequately supported because TMI failed to perform the tasks required of it by the AD law, or to timely seek direction from Commerce. See Nippon Steel Corp., 337 F.3d at 1382 (stating that a respondent must "have familiarity with all of the records it maintains . . . and conduct prompt, careful, and comprehensive investigations of all relevant records . . . ."); Pac. Giant, Inc. v. United States, 26 CIT 1331, 1332–33 (2002) (providing that a respondent must alert Commerce to any discovered problems).

      Commerce's finding that TMI failed to cooperate by not acting to the best of its ability, therefore, is supported by substantial evidence. Accordingly, Commerce's Remand

---

[2](...continued)
difficulties it now claims. See Wuhan Bee Healthy Co. v. United States, 31 CIT 1182, 1193 (2007).

Results are sustained.

## II.    Corroboration

Next, TMI challenges the Final Results on the grounds that the selected AFA rate of 111.73% violates 19 U.S.C. § 1677e(c) because it is not corroborated and is punitive. Pl.'s Br. 26; Pl.'s Cmts. 23. This claim lacks merit.

When Commerce uses inferences that are adverse to the interests of an uncooperative party, the AD duty rate[3] will be an AFA rate and may be based on information obtained from: "(1) the petition, (2) a final determination in the investigation under this subtitle, (3) any previous review under [19 U.S.C. § 1675] . . . or determination under [19 U.S.C. § 1675b] . . ., or (4) any other information placed on the record." 19 U.S.C. § 1677e(b). Although "the possibility of a high AFA margin creates a powerful incentive to avoid dumping and to cooperate in investigations, there is a limit to Commerce's discretion." PAM S.p.A. v. United States, 582 F.3d 1336, 1340 (Fed. Cir. 2009). Pursuant to 19 U.S.C. § 1677e(c), "[w]hen the administering authority . . . relies on secondary information rather than on information obtained in the course of an investigation or review, the administering authority . . . shall, to the extent practicable, corroborate that information from independent sources that are reasonably at their disposal." 19 U.S.C. § 1677e(c). Here, the AFA rate of 111.73% was a weighted-average

---

[3] A dumping margin is the difference between the normal value ("NV") of merchandise and the price for sale in the United States. See 19 U.S.C. § 1673e(a)(1); 19 U.S.C. § 1677(35). Unless nonmarket economy ("NME") methodology is used, an NV is either the price of the merchandise when sold for consumption in the exporting country or the price of the merchandise when sold for consumption in a similar country. 19 U.S.C. § 1677b(a)(1). In an NME case, NV is calculated using information from comparable surrogate market economies. 19 U.S.C. § 1677b(c)(1). An export price or constructed export price is the price that the merchandise is sold for in the United States. 19 U.S.C. § 1677a(a)-(b).

margin calculated for a cooperating respondent during the previous administrative review and thus, is secondary information. See KYD Inc. v. United States, 607 F.3d 760, 765 (Fed. Cir. 2010) ("Secondary information includes [i]nformation derived from the petition that gave rise to the investigation or review, the final determination concerning the subject merchandise, or any previous review under [19 U.S.C. § 1675] concerning the subject merchandise." (Alteration in original) (Internal quotation marks omitted)). Commerce, therefore, must corroborate this rate by showing that it used "reliable facts" that had "some grounding in commercial reality." Gallant Ocean (Thai.) Co. v. United States, 602 F.3d 1319, 1324 (Fed. Cir. 2010) (Internal quotation marks omitted); see 19 U.S.C. § 1677e(c).

In the Final Results, Commerce reasoned that 111.73% was reliable because it "is a calculated rate from the most recently completed segment of the proceeding" and relevant because the "rate has not been judicially invalidated and indicates that pure magnesium is dumped in the United States at a rate of 111.73 percent."[4] Issues and Decision Memorandum at 13. Commerce explained that this rate was the best available information because TMI was the

---

[4] TMI claims that this rate of 111.73% has been discredited and is now 95.93%. Pl.'s Br. 24. The rate from the prior review for the cooperating respondent at issue, however, remains 111.73% because a motion to amend the rate was denied and an appeal was not pursued. See Tianjin Magnesium Int'l Co. v. United States, 722 F. Supp. 2d 1322, 1328 (CIT 2010). Thus we cannot know if the final result of further litigation would have been an altered rate. Furthermore, TMI notes that this rate is not accurate without putting forth specific information in this review or before the court that would permit the court to find 95.93% is a more accurate AFA margin. See Pl.'s Br. 24 n.2. Some inaccuracy is inherent in AFA rates, which are simply a proxy for missing data. In the prior review, the China-wide AFA rate was also in the same general range. See Pure Magnesium from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, 73 Fed. Reg. 76,336, 76,337 (Dep't Commerce Dec. 16, 2008). The differences here are not so great that the court would overlook TMI's lack of substantial briefing in this regard.

only respondent in the current review, and TMI's information from previous reviews was unreliable, as Commerce had granted similar by-product offsets in the past without verification.[5] Id. at 13. The AFA rate assigned to TMI under these circumstances, therefore, is lawful because it is equal to the only weighted-average rate calculated for a cooperating company in the prior review.[6] See Shanghai Taoen Int'l Trading Co. v. United States, 29 CIT 189, 197, 360 F. Supp. 2d 1339, 1346 (2005) (providing "that in cases in which the respondent fails to provide Commerce with information necessary to calculate an accurate antidumping margin, it is within Commerce's discretion to presume that the highest prior margin reflects the current margins" (internal quotation marks omitted)). Accordingly, the AFA rate of 111.73% assigned to TMI is

---

[5] TMI argues that Commerce failed to corroborate this rate because it failed to tie this rate to TMI's actual sales. Pl.'s Br. 23. TMI also contends that Commerce ignored "a large body of reliable information," presumably TMI's sale data from past reviews, "supporting the application of a much lower margin." Id. Commerce, however, "note[d] concern with using a prior margin calculated after [Commerce] granted the by-product offsets requested by TMI," the same by-product offsets that were unverifiable in the current review. Issues and Decision Memorandum at 13. Thus, TMI's prior margins, as well as the sales data underlying those results, were unreliable. See Qingdao Taifa Grp. Co. v. United States, Slip Op. 2011-83, 2011 Ct. Int'l Trade LEXIS 81, at *13 (CIT July 12, 2011) ("Taifa IV").

[6] TMI contends that this rate is punitive, and aberrational, and therefore, contrary to law because it is 177 times greater than the highest calculated rate for TMI from a previous review. Pl.'s Br. 24. Although Commerce calculated AD margins of zero and 0.63% for TMI in prior reviews, Pure Magnesium from the People's Republic of China: Final Results of 2004-2005 Antidumping Duty Administrative Review, 71 Fed. Reg. 61,019, 61,020 (Dep't Commerce Oct. 17, 2006); Pure Magnesium from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, 73 Fed. Reg. at 76,337, Commerce also expressed skepticism of the accuracy of those rates because it granted TMI the same by-product offsets that it could not verify in this review, Issues and Decision Memorandum at 13. Some of the offsets do seem to be unusually large. See Remand Results at 8–9. The seemingly large difference between TMI's previous AD margins and the assigned AFA rate in this review, therefore, is irrelevant due to the fact that TMI's previous AD margins cannot be said to reflect TMI's commercial reality. See Taifa IV, 2011 Ct. Int'l Trade LEXIS 81, at *13.

corroborated to the extent practicable.

## CONCLUSION

For the foregoing reasons, Commerce's determinations are supported by substantial evidence and are in accordance with the law. Accordingly, the <u>Remand Results</u> are sustained.

/s/ Jane A. Restani<br>
Jane A. Restani<br>
Judge

Dated: This 10th day of August, 2011.
     New York, New York.

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TIANJIN MAGNESIUM INTERNATIONAL CO., LTD., : : : Plaintiff, : : v. : : UNITED STATES, : : Defendant, : : and : : US MAGNESIUM LLC, : : Intervenor Defendant. : : | Before: Jane A. Restani, Judge<br><br>Court No. 09-00535 |

## **JUDGMENT**

The determination on remand of the United States Department of Commerce in this action is hereby sustained and in accordance with 19 U.S.C. § 1516a(e), liquidation of any entries heretofore enjoined in this action shall be liquidated only in accordance with the final results of this litigation, including any and all appeals.

                                                                                /s/ Jane A. Restani
                                                                                  Jane A. Restani
                                                                                        Judge

Dated: This 10th day of August, 2011.
       New York, New York.